## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

LORI TAVARES,

                Plaintiff,

v.

LAWRENCE & MEMORIAL HOSPITAL,

                Defendant.

3: 11 - CV - 770 (CSH)

## RULING ON MOTION TO QUASH SUBPOENA DUCES TECUM

HAIGHT, Senior District Judge:

## I.  INTRODUCTION

Plaintiff Lori Tavares ("plaintiff") brings the present action for wrongful termination of her employment as a nurse by defendant Lawrence & Memorial Hospital ("L&M" or "defendant") in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*   Specifically, plaintiff sets forth two counts in her Complaint: (1) violation of the FMLA, in terminating plaintiff during her approved three-month leave from employment to care for her husband during his recuperation from spinal fusion surgery; and (2) "negligent infringement of emotional distress," by wrongfully terminating plaintiff and thereby "caus[ing] Plaintiff [to suffer] severe emotional distress, anxiety, sleeplessness and depression."[1]  Doc. #1, ¶ 42.  Plaintiff further alleges that

---

[1]  Connecticut recognizes the tort of "negligent *infliction* of emotional distress" so it is likely that plaintiff intended to set forth a claim for that tort rather than "negligent *infringement* of emotional distress." Doc. #1, p. 5.  *See, e.g., Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446-47 (2003) (describing elements of cause of action for negligent infliction of emotional distress).  For purposes of this motion, the exact title of the cause of action is of no moment.  However, for purposes of clarity,  the Court shall refer to plaintiff's state claim as "negligent infliction of

1

defendant "should have realized that [such] distress, if it were caused, might result in illness and bodily harm."[2]  *Id.*, ¶ 41.

In describing her alleged wrongful termination, plaintiff states that she was terminated in response to a vacation she took with her husband to Cancun, Mexico on April 14 - 21, 2010, "following [her husband's] doctor's recommendation that a warmer climate would promote healing after surgery." *Id.*, ¶ 25.  Plaintiff asserts that as early as December of 2009, she informed her direct supervisor, Karen Stone, of her vacation plans to travel to Mexico from April 10 - 17, 2010.  *Id.*, ¶¶ 10-11.  Plaintiff alleges that in response to Stone's initial denial of approval because "staffing was poor for the [original] dates requested," plaintiff moved the dates of her planned trip by four days (to April 14 - 21, 2010) to accommodate the needs of her employer's nursing unit.  *Id.*, ¶¶ 10-13. Plaintiff ultimately chose April 14 - 21, 2010, for the trip because on those dates "[p]laintiff would already be off duty." *Id.*, ¶ 12.  Due to her husband's accidental injury at work and resulting spinal fusion surgery on February 5, 2010, plaintiff's vacation week ultimately fell during her FMLA leave period of February 1, 2010, to May 1, 2010. *Id.*, ¶¶ 15, 19-21.  Plaintiff elected to go through with the April trip to Mexico because her husband's physician deemed the trip beneficial to her husband's recovery.[3]  *Id.*, ¶ 25. On April 27, 2010 – four days before plaintiff's FMLA leave was scheduled

---

emotional distress."

[2] Plaintiff also alleges that defendant placed her "under surveillance," and hired a "Special Investigator" to monitor her activities both while she was on leave (April 3 and 4, 2010) and "after [her] termination."  Doc. #1, ¶¶ 37, 40 (c).  Such monitoring allegedly "involved an unreasonable risk of causing [her] distress."  *Id.*, ¶¶ 40 (c), 41.

[3] In an April 30, 2010, letter from neurosurgeon Alan S. Waitze "to Whom it May Concern" regarding Joseph Tavares, Dr. Waitze wrote as follows:

Joseph Tavares is a patient in this office.  He is recovering from lumbar spinal fusion

to expire – she  was terminated for the stated reason of "taking a vacation under the guise of FMLA

after being denied vacation time."  *Id.*, ¶ 16.

## II.  JURISDICTION

Plaintiff invokes the subject matter jurisdiction of the Court pursuant to 28 U.S.C. § 1331,

"federal claim" jurisdiction, with respect to her FMLA claim.[4]  Doc. #1, ¶ 3.  She also "requests this

Court to invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes

of action based on Connecticut common law that arise from the same facts as the federal claim" –

*i.e*., her "negligent infringement of emotional distress claim" at Count Two.[5]  *Id.*  In requesting the

Court to invoke supplemental jurisdiction, plaintiff essentially concedes that her federal FMLA claim

and state negligent infliction of emotional distress claim are "so related" that they "form part of the

---

surgery.  It is helpful to spend some time recovering from this surgery in a warmer
climate.  He continues to require assistance.  His wife, Lori Tavares, has been
providing him with this assistance.  It was necessary to accompany him to a warmer
climate.

Doc. #34-3, p. 7.

[4]A district court has "federal question" jurisdiction if the plaintiff sets forth a colorable
claim under the Constitution or federal statute.  28 U.S.C. § 1331 ("The district courts shall have
original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United
States.").

[5]Section 1367, captioned, "Supplemental jurisdiction," states in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise
by Federal statute, in any civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental jurisdiction over all other
claims that are so related to claims in the action within such original jurisdiction that
they form part of the same case or controversy under Article III of the United States
Constitution.

28 U.S.C. § 1367(a).

same case or controversy."  28 U.S.C. § 1367(a).  *See also Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989) (district court has "jurisdiction to hear claims under state law whenever (1) there is a claim arising under the constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) .

## III.  PENDING MOTION

Pending before the Court is the motion to quash of non-party marital and family therapist Nina Rossomando, Ph. D., who seeks to quash a subpoena duces tecum dated May 10, 2012, and served by defendant on May 22, 2012.  Doc. #26, #26-1.  That subpoena commanded Rossomando to appear at a deposition to be held at her office in Waterford, Connecticut, and to produce "[a]ny and all records, notes and other documents, including any documents maintained or created electronically, relating to the treatment of Lori Tavares and Joseph Tavares since January 2005." Doc. #26-1.  Dr. Rossomando moves this Court to quash the subpoena on the grounds that, absent an express waiver from both Lori and Joseph Tavares, Connecticut General Statute § 52-146p bars her  from disclosing communications with and between patients during the course of marital or family counseling.  *See* Conn. Gen. Stat.  § 52-146p(b) ("all [marital therapy] communications shall be privileged and a marital and family therapist shall not disclose any such communications unless the person or his authorized representative consents to waive the privilege and allow such disclosure").

4

In contrast, defendant L&M urges the Court to apply federal common in this federal action with respect to potentially privileged psychotherapist/patient communications. L&M points out that plaintiff expressly consented to Dr. Rossomando's production of the marital therapy records at issue by "sign[ing] an authorization to release medical information in response to L&M's [applicable] discovery request." Doc. #34, p. 4. Moreover, L&M asserts that plaintiff also "placed her treatment with Dr. Rossomando . . . in issue in this litigation by virtue of the allegations she has made in her complaint, her discovery responses and the evidence she voluntarily disclosed (with her husband's consent) in the prior arbitration and in connection with her complaint to the Connecticut Department of Labor." Doc. #34, p. 4. Consequently, defendant asserts that plaintiff has both expressly and impliedly waived the federal common law psychotherapist-patient privilege with respect to the marital therapy records at issue.[6]  *Id.*, p. 9-10.

With respect to Mr. Tavares, defendant concedes that he "is not a party to this litigation" and has signed no medical authorization. Doc. #34, p. 4. Defendant has thus presented the Court with a proposed protective order to ensure appropriate confidentiality of the Tavares's marital therapy records. Doc. #34-1, p. 2-4.

For the reasons set forth below, the Court holds that it must apply federal common law to the asserted privilege as to psychotherapist/patient communications and plaintiff has expressly and impliedly waived that privilege as to the marital therapy records at issue. Plaintiff's husband, however, as a non-party who executed no waiver, will, along with his wife and to the extent feasible, be afforded limited protection with respect to the records sought via entry of a protective order.

---

[6]Plaintiff herself has filed no memorandum with respect to her position on the subpoena duces tecum served on Dr. Rossomando.

5

## IV.  DISCUSSION

**A.      Standards of Law**

**1.      Relevance**

In general, parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation.  Fed. R. Civ. P. 26(b)(1).[7]  The information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

For purposes of discovery, "relevance" has been defined broadly to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  The party who resists discovery bears the burden of showing why a discovery request should be denied.  *Jacobs v. Connecticut Comty. Technical Colls.*, 258 F.R.D. 192, 195 (D.Conn. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975));  *EDO Corp. v. Newark Ins. Co.*, 145 F.R.D. 18, 24 (D.Conn. 1992).

**2.      Subpoenas**

With respect to subpoenas of witnesses and documents, a party may "command each person

---

[7]Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

to whom [the particular subpoena] is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." Fed. R. Civ. P. 45 (a)(1)(A)(iii).   A party who seeks to quash such a subpoena may then, "[o]n timely motion," request the Court to quash or modify the subpoena as specified under Federal Rule 45 (c)(3).   One such recognized ground for quashing is when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  *Id.* (c)(3)(A)(iii).

### 3.    Privilege and Waiver at Federal Common Law

Federal Rule of Evidence 501 dictates that, in general, "privilege" is interpreted pursuant to federal common law except that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  *See* Fed. R. Evid. 501.[8]   At federal common law, one recognized privilege is the privilege which exists between a licensed

---

[8] Federal Rule of Evidence 501, captioned "Privilege in General," provides in relevant part:

The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise:

• the United States Constitution;

• a federal statute; or

• rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.

7

psychotherapist and his or her patient in the course of diagnosing or treating said patient.  *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) ("psychotherapist-patient privilege is rooted in the imperative need for [the patient's] confidence and trust" in privacy and thus patient's "confidential communications made to licensed psychiatrists and psychologists" are rightfully protected from disclosure under Fed. R. Evid. 501).[9]

In holding confidential communications between a licensed psychotherapist and patient in the course of diagnosis or treatment as protected from compelled disclosure under Rule 501, the United States Supreme Court in *Jaffee v. Redmond* specifically rejected any "balancing component of the privilege," observing that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." 518 U.S. at 17. *See also Sanabria v. Martins*, 568 F. Supp.2d 220, 229 (D. Conn. 2008).

The *Jaffee* Court, however, noted that "[l]ike other testimonial privileges, the patient may of course waive the protection" of the psychotherapist/patient privilege. 518 U.S. at 15 n.14.  Courts

---

[9] In recognizing the psychotherapist-patient privilege at common law, the *Jaffee* Court sought to bolster state legislation that was enacted to protect these confidential communications:

> Because state legislatures are fully aware of the need to protect the integrity of the factfinding functions of their courts, the existence of a consensus among the States indicates that "reason and experience" support recognition of the privilege. In addition, given the importance of the patient's understanding that her communications with her therapist will not be publicly disclosed, any State's promise of confidentiality would have little value if the patient were aware that the privilege would not be honored in a federal court.  Denial of the federal privilege therefore would frustrate the purposes of the state legislation that was enacted to foster these confidential communications.

518 U.S. at 13 (citing, *inter alia,* Conn. Gen. Stat. § 52-146c (1995) at n.11).

have held  that  waiver may be effectuated upon written consent but also through implied waiver, such as when a plaintiff places his or her mental state at issue by seeking damages for  emotional distress.  *See, e.g.,  United States v. Clarke,* No. 3:04 CR 00021 (SRU), 2005 WL 2645003, at *3 (D.Conn. July 19, 2005) (express waiver of psychotherapist-patient privilege found where "Clarke explicitly authorized disclosure to the United States Attorney for the District of Connecticut and the Law Department of the United States Postal Service, in connection with her civil lawsuit, 'any and all records, information and evidence in their possession regarding my physical, psychological or psychiatric condition and treatment....' "); for implied waiver*, see  Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("[W]aiver may be implied in circumstances where it is called for in the interests of fairness," including "when the party attempts to use the privilege both as a shield and a sword.") (internal quotations and citation omitted); *John Doe Co. v. United States (In re Grand Jury Proceedings)*, 350 F.3d 299, 302 (2d Cir.2003) ("in  certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted")*; Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir. 2000)  ("a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue").

With respect to implied waiver,  the Second Circuit made clear  in  *Sims v. Blot* that it has adopted a narrow  view of waiver, requiring the plaintiff to make more than a "garden variety" claim for emotional distress, that  is more than a claim of emotional injury for damages  ordinarily associated with a conventional claim for pain and suffering.[10]   534 F.3d at 133-35.

_____

[10]As Judge Droney explained in  *Jacobs v. Connecticut Cmty. Technical Colls.,*  258 F.R.D. 192 (D. Conn. 2009):

B.      **Motion to Quash Subpoena Duces Tecum Served on Dr. Rossomando**

Family and marital therapist Nina Rossomando has moved to quash the subpoena duces

tecum served upon her by defendant L&M requesting production of therapy records "relating to

[Rossomando's] treatment of Lori Tavares and Joseph Tavares since January 2005." Doc. #26, #26-

1.  Although not a party to this action, Dr. Rossomando is the appropriate movant and, in fact, the

only person with undisputed standing to file this motion to quash, in that she is "the person or entity

to whom [said] subpoena is directed."  *Jacobs v. Connecticut Comty. Technical Colls.*, 258 F.R.D.

192, 194-95 (D. Conn. 2009) (citing *Chemical Bank v. Dana,* 149 F.R.D. 11, 13 (D. Conn.1993);

*see also* 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2459, at 41 (2d

ed.1995)).

In substance, Rossomando makes no reference to the federal common law privilege that

protects confidential communications between licensed psychotherapists and their patients.  Rather,

---

[U]nder the "narrow" view, a plaintiff is not deemed to have waived the privilege by alleging only "garden variety" emotional distress. [*EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 120 (W.D.N.Y. 2009).]  Courts using the narrow approach "must distinguish between garden variety claims and claims for more 'severe' emotional distress, such as those involving . . . diagnoses of a specific psychiatric disorder." *Id.* at 121. "Garden variety claims refer to claims for 'compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized.' " *Id.* (citation omitted).

In *Sims*, the Second Circuit adopted the narrow view of waiver. The issue in *Sims*, similar to that in this case, was whether the plaintiff, who had asserted a civil rights claim, had waived the psychotherapist-patient privilege by virtue of his allegations in the pleadings or his responses to discovery requests. *Sims,* 534 F.3d at 133. The court held that the plaintiff had not waived the privilege because he had asserted no more than a garden variety claim for emotional distress, that is, a claim of emotional injury for damages ordinarily associated with a conventional claim for pain and suffering. *Id.* at 120, 140-41.

258 F.R.D.  at 195-96.

she bases her motion to quash exclusively on a Connecticut statutory provision that bars a marital therapist from disclosing communications with and between patients during the course of marital or family counseling.   *See* Conn. Gen. Stat.  § 52-146p (captioned "Disclosure of privileged communications between marital and family therapist and person consulting such therapist prohibited.").[11]   That statute expressly bars a marital therapist from disclosing communications during therapy absent a waiver from each member of the family who is receiving therapy. *Id.* §52-146p(b).

The statute also specifically delineates three exceptions under which patient communications may be produced even absent an explicit waiver from each patient who has received therapy.   The statute provides that "[c]onsent of the person shall not be required for the disclosure of such person's communications:

> (1) Where mandated by any other provision of the general statutes;
>
> (2) Where a marital and family therapist believes in good faith that

_____

[11]   The Connecticut statute defines "communications" as "all oral and written communications and records thereof relating to the diagnosis and treatment of a person between such person and a marital and family therapist or between a member of such person's family and a marital and family therapist." Conn. Gen. Stat. § 52-146p (a)(3).  The statute then states, in relevant part:

> [A]ll communications shall be privileged and a marital and family therapist shall *not disclose any such communications unless the person or his authorized representative consents to waive the privilege and allow such disclosure*. In circumstances where more than one person in a family is receiving therapy, each such family member shall consent to the waiver.  In the absence of such a waiver from each such family member, a marital and family therapist shall not disclose communications with any family member.

*Id*. § 52-146p (b)(emphasis added).  For purposes of the statute, " '[c]onsent' means consent given in writing by the person or his authorized representative."  *Id.* § 52-146p (a)(4).

the failure to disclose such communications presents a clear and present danger to the health or safety of any individual; [or]

(3) Where a marital and family therapist makes a claim for collection of fees for services rendered, the name and address of the person and the amount of the fees may be disclosed to individuals or agencies involved in such collection, provided notification that such disclosure will be made is sent, in writing, to the person not less than thirty days prior to such disclosure.

Conn. Gen. Stat. § 52-146p (c)(1)-(3).[12]

Dr. Rossomando contends that, where none of the three statutory exceptions is applicable, she is barred by Connecticut state law from disclosing privileged communications which occurred with and between plaintiff and her husband during the course of marital therapy. *See* Conn. Gen. Stat. § 52-146p(b). Rossomando concludes that "[w]ithout an authorization from both Lori and Joseph Tavares, the records sought in the subpoena cannot be produced absent a court order." Doc. #26, p. 2. In sum, Rossomando requests the Court to quash the subpoena to produce the therapy records because Lori and Joseph Tavares have a statutorily recognized personal privacy right and privilege in Connecticut with respect to the information contained in those records and no exception or waiver applies. Fed. R. Civ. P. 45(c)(3)(A).

1.      <u>Applicable Law Re: Asserted Privilege – Federal Common Law or State Statute</u>

This Court may not simply apply the Connecticut statute cited by Rossomando to the current

_____

[12] Furthermore, "[u]nlike the statutory provisions relating to communications with a psychiatrist, psychiatrist and social worker, there is no express statutory provision for court-ordered disclosure when the party introduces his or her mental condition as an element of a claim or defense and the court finds that disclosure is more important to the interests of justice than the preservation of the therapist-patient relationship." 7 Conn. Prac., Family & Law Prac. § 23:15 (3d ed. 2011-2012). Put simply, the Connecticut legislature has provided no statutory exception for implied waiver with respect to marital or family therapy records.

dispute regarding the subpoena duces tecum.  Rather, the Court must determine whether federal common law or the Connecticut state statute applies to the privilege asserted.  To do so,  a district court in a federal proceeding must examine the claims for which the discovery is sought and the basis for the Court's jurisdiction.   If the action solely contains a state law claim and the basis for jurisdiction is diversity of citizenship, Rule 501 of the Rules of Evidence mandates that "state law governs privilege regarding  a claim or defense for which state law supplies the rule of decision." *See also Jaffee*, 518 U.S. at 17 ("if only a state-law claim had been asserted in federal court, the second sentence in Rule 501 would have extended the [state statutory] privilege to that proceeding").[13]

However, the Second Circuit has held that where there is federal question jurisdiction and the  evidence sought is relevant to both the federal and state claims,  "courts consistently have held that the asserted privileges are governed by the principles of federal law."[14] *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987), *cert.  denied sub. nom.*, *Reynolds v. von Bulow by*

---

[13]  The United States Supreme Court in *Jaffee* skirted the issue of when  "both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law.  518 U.S. at 17 n.15.   Although conceding that "there is disagreement concerning the proper rule in cases such as this," the Court decided to "express no opinion on the matter" because " the parties [did] not raise question" and the Court's "resolution of the case [did] not depend on it."  *Id*.

[14]  Other Circuit Courts have concurred with the Second Circuit,  holding  that "in federal question cases the federal common law of privileges applies."  *William T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3rd Cir.1982).  *See also Steffes v. Stepan Co.*, 144 F.3d 1070, 1074–75 (7th Cir.1998) (refusing to state "absolute litigation privilege" in federal question case); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981) (where "complaint state[d] a pendent state claim to which the information sought would also be relevant," federal common law regarding privilege  applied where "principal claim" in the case arose "under the Sherman Act").

*Auersperg*, 481 U.S. 1015 (1987).   *See also  Ziemann v. Burlington County Bridge Com'n*, 155 F.R.D. 497, 503 (D.N.J. 1994) ( "where federal jurisdiction is based upon the presence of federal claims (although there are state law claims as well), Rule 501 mandates that the federal common law of privileges applies"); *PPM America, Inc. v. Marriott Corp*., 152 F.R.D. 32, 34 (S.D.N.Y.1993) ("When cases involve both federal and state claims, asserted privileges are governed by the principles of federal law").  *Accord  Pinkard v. Johnson*, 118 F.R.D. 517, 519-20 (M.D.Ala.1987) (where evidence sought is "relevant to both federal and state claims . . . courts have held consistently that the asserted privileges are governed by the principles of federal law").[15]

In the  Second Circuit, where  "[t]he evidence sought . . . is relevant to both the federal and state claims," the asserted privileges are "governed by the principles of federal law."  *von Bulow by Auersperg,*  811 F.2d at 141.  Moreover,  in an action such as this, where federal jurisdiction is based on the presence of a federal claim and supplemental  jurisdiction exists over the state claim, "federal law of privilege controls the question whether the privileges asserted . . . should be recognized."[16]

---

[15]  The Court notes that defendant cites the case of  *Safeco. Ins. Co. of America v. Vecsey*, 259 F.R.D. 23, 30-31 (D. Conn. 2009),  regarding waiver principles applied by a court of this District with respect to Conn. Gen. Stat. § 52-146c(c)(2).  However, discussion of *Safeco Ins. Co.* and the proper application of the state privilege statute regarding marital therapy records are both inapposite in this case because subject matter jurisdiction is based on a federal question (*i.e.*, plaintiff's FMLA claim).  28 U.S.C. § 1331.   *Cf. Safeco Ins. Co.*, 259 F.R.D. at 27-28 ("Where, as here, a federal court's subject-matter jurisdiction is premised on *diversity of citizenship*, the court "must apply state law to privilege issues.") (citing *Uniroyal Chemical Co. v. Syngenta Crop Protection*, 224 F.R.D. 53, 55 n. 1 (D.Conn.2004) and *Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) ("in a *diversity* case the existence of a privilege is to be determined by reference to state law")) (emphasis added).

[16]  In *von Bulow*, the  Second Circuit quoted the "Senate Report which accompanied Rule 501 [of the Federal Rules of Evidence]" in support of its holding, as follows:

'[I]t is also intended that the Federal Law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case.' S.Rep. No.

*Id.*  Under these circumstance, where plaintiff has filed a federal claim for violation of the FMLA and invoked the Court's supplemental jurisdiction to bring her state law claim for negligent infliction of emotional distress, arising from her termination, the asserted privilege is governed by federal common law.[17]   Thus, the Connecticut statute regarding privilege as to marital therapy records, as embodied in Conn. Gen. Stat. § 52-146p (b), may be viewed as persuasive in expressing the Connecticut legislature's desire to protect the privacy of such records, but it does not control.

Although federal common law has not explicitly recognized a privilege for marital counseling records, pursuant to the non-fully-delineated contours of the psychotherapist-patient privilege in *Jaffee*, 518 U.S. at 18, the Court finds that the intended confidentiality of such marital therapy records, as protected by Connecticut statute, merits consideration.[18]  *See Ziemann v. Burlington County Bridge Com'n*, 155 F.R.D. 497, 504 (D.N.J. 1994) ("While this court is not prepared to recognize the marriage counselor privilege as a matter of federal common law, it should, however,

---

1277, 93rd Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 7051, 7059 n.16.

811 F.2d. at 141.  Because the "instant case [was] a federal question case" and "pendent state law claims [arose] in the case," "the federal law of privilege control[led] the question of whether the privileges asserted . . . should be recognized."  *Id.*

[17]   In the case at bar, emotional distress is both an element in the state claim for negligent infliction of emotional distress, *Witt v. Yale-New Haven Hosp.*, 51 Conn. Supp. 155, 161-62 (Super. Ct. Sept. 30, 2008), and an aspect of the damages alleged as to violation of the FMLA, Doc. #1, Count One, ¶ 29 (alleging "severe emotional distress, anxiety, sleeplessness and depression").  Plaintiff's mental state is thus relevant with respect to both claims.

[18]  *See* 81 Am. Jur. 2d Witnesses § 416 (2d ed. May 2012) (Supreme Court noted in *Jaffee* that "although common-law rulings may once have been the primary source of federal law on privileges, that is no longer the case, and a consistent body of policy determinations by state legislatures may reflect both reason and experience, which the Court may use to determine federal common law in this area.").

receive protection as an outgrowth of the psychotherapist-patient privilege."). *See also Oliphant v. Department of Transp.*, 171 F. App'x 885, 887-88 (2d Cir. 2006) (recognizing that in *Jaffee*, the Supreme Court "declin[ed] to delineate [the] full contours of the psychotherapist privilege" and "described the privilege *broadly*") (emphasis added) (internal quotations and citations omitted).

In exercising a degree of comity with the Connecticut legislature and granting some protection to communications resulting from the marital therapist-patient relationship, the Court need not, however,  permit the full breadth of protection accorded by Conn. Gen. Stat. § 52-146p (b). Thus, applying federal common law, written consent is not deemed the only means of waiver.

### 2.    Application of Federal Common Law to Privilege Protecting Confidential Communications between Psychotherapist and Patient

#### a.    Express Waiver by Plaintiff

In the present action, assuming *arguendo* that marital therapy records are encompassed under the protection of *Jaffee* (*i.e.*,  the federal common law privilege with respect to confidential communications between a licensed psychotherapist and patient), plaintiff has expressly waived the privilege with respect to those records.   In particular, plaintiff signed and produced a medical authorization to "release [to L&M's counsel] pertinent information with respect to [her] treatment . . . including information relating to diagnosis or treatment of mental illness. . . ."  Doc. #34-5, p. 17-18 (Response to production request #11, entitled "Special Authorization for Release of Mental Health, Substance Abuse, HIV-Related and/or Genetic Testing Information" and dated "11/10/11"). Although plaintiff left the name of the physician authorized to produce the records blank, by producing the authorization in conjunction with her interrogatory naming Dr. Rossomando as her marital therapist, it is clear that plaintiff contemplated that the authorization would be addressed to

16

Dr. Rossomando.  Consequently, in providing the signed medical authorization in relation to naming Nina Rossomando as the  marital counselor she "consulted since January 1, 2000," Doc. #34-5, p. 5 (response to interrogatory #4), plaintiff *expressly* consented to Rossomando's production of her marital therapy records for the stated time period.

### b.   <u>Implied Waiver by Plaintiff</u>

"Because of the existence of an express waiver there is no need to reach the question of whether [plaintiff] has created an 'at issue' waiver."  *United States v. Jacobs*, 2005 WL 2645003, at *3 n.8.   However, were plaintiff to contest the sufficiency and/or validity of her express authorization – which to date she has not – one need only examine her Complaint in its entirety to determine that she has impliedly waived the federal common law privilege as to confidential psychotherapist/patient communications.   In Count Two of her Complaint, plaintiff has alleged a separate claim for "negligent infringement of emotional distress."   Doc. #1, Count Two, ¶¶ 30-43. By alleging "a separate cause of action for emotional distress," one impliedly  waives the therapist-patient privilege as to one's confidential therapy records.  *Jacobs v. Connecticut Cmty. Technical Colls*., 258  F.R.D. 192, 195-96 (D.Conn. 2009).   *Accord Green v. St. Vincent's Medical Center*, 252 F.R.D. 125, 129 (D. Conn. 2008) (finding implied  waiver of privilege  where plaintiff claimed negligent and intentional infliction of emotional distress)*; Sanabria v. Martins*, 568 F. Supp.2d 220, 229 (D. Conn. 2008) ("By claiming intentional infliction of emotional distress in the third count of his Amended Complaint, Plaintiff has waived the psychotherapist-patient privilege he would otherwise enjoy.")*.*

Furthermore, in support of her prior complaint to the Connecticut Department of Labor,

"plaintiff voluntarily (and without known objection from her husband) submitted . . . a letter from [marital therapist] Dr. Rossomando dated May 11, 2010."[19]  Doc. #34-2, ¶ 10; *see also* Doc. #34-3, p. 9.  The letter from clinical psychologist Nina P. Rossomando, Ph.D., "to Whom it May Concern," addressed the psychological treatment of Lori Tavares.  Doc. #34-3, p. 9.  The letter stated that Mrs. Tavares sought such treatment in order to "assist her in dealing with the chronic stress and anxiety related to her husband's severe accident related disability (May 2004) and the acute stress precipitated by the most recent surgery." *Id.*  Moreover, Dr. Rossomando detailed that "[d]uring this time of tremendous stress," plaintiff had the sole responsibility for the "post-surgical care of her husband who was in considerable pain," for "chauffeuring him to numerous doctors['] appointments," and for "the care of their four children," which included "preschool twins."[20]  *Id.*

Lastly,  plaintiff's discovery responses revealed that she acknowledged, without objection, the relevance of the marital therapy records held by Dr. Rossomando.  By interrogatory, L&M requested that plaintiff "[i]dentify any health care professional . . .  with whom you have sought treatment for emotional distress or any other mental or emotional problems since January 1, 2000."

---

[19]  Plaintiff's complaint filed with the Connecticut Department of Labor was dismissed on April 3, 2012.  Doc. #34-4, p. 2 ("it is the opinion of the Wage and Workplace Standards Division that Lawrence & Memorial Hospital did not violate the Connecticut Family and Medical Leave Act (FMLA) with regard to [plaintiff's] termination" because employer L&M "had a good faith belief" that  – in traveling with her spouse to Mexico during her FMLA leave – plaintiff "was abusing the time she was out for the FMLA leave [to care] for her husband").

[20]  When asked to produce any  correspondence regarding her claims, or  any other documents pertaining to her claims in the lawsuit, plaintiff specifically referred L&M to the documents that had  already been produced to L&M prior to the lawsuit "during Arbitration between the parties."  Doc. #34-5, p. 11 (document request #9 & response).  Defendant emphasizes that correspondence previously produced to L&M includes the aforementioned letters from Dr. Waitze and Dr. Rossomando.  Doc. #34, p. 3, 4 (discussing Doc. #34-3, p. 7, 9).

Doc. #34-5, p. 4 (interrogatory #3).  Plaintiff responded by stating  that she sought treatment with "Nina Rossomando, PhD," as well as other health care providers.  *Id.*, p 4-5.  Next, in response to an interrogatory requesting the name of "any marital counselor" with whom she and her husband consulted since January 1, 2000, plaintiff identified solely Dr. Rossomando.  *Id.*, p. 5 (interrogatory #4).  Finally, when asked to produce a signed authorization for the medical records of "each and every health care professional identified in interrogatories 3 & 4," plaintiff signed and produced the requested form.  *Id.*, p. 10 (document request #11).  Plaintiff made no objections to the described discovery requests.

Given the allegations set forth in the  Complaint, plaintiff's testimony in previous proceedings, and her relevant discovery responses – including the letter from Dr. Rossomando– the Court finds that plaintiff repeatedly placed her mental state directly in issue in this action.  Therefore, even if plaintiff had failed to provide express written consent to production of her marital therapy records held by Dr. Rossomando, she still impliedly waived the psychotherapist-patient privilege as it extends to confidential communications with respect to diagnosis and/or treatment.

### c.   No Explicit Waiver by Plaintiff's Husband, Joseph Tavares

Plaintiff's husband, Joseph Tavares, has made no express waiver of privilege regarding his confidential marital therapy records.  Unlike his wife, he has signed no medical authorization. Furthermore,  as a non-party to this action, he has filed no claim  – that is, he has not placed his mental state in issue in this action.  Thus, to the extent he has received psychotherapy from Dr. Rossamondo, Mr. Tavares has, prior to service of the subpoena on Dr. Rossomando, made no

implied waiver of the federal common law psychotherapist-patient privilege.[21]

The Court notes, however, that Mr. Tavares has also not asserted his privilege with respect to the medical records held by Dr. Rossomando. If he is aware of the contents of the subpoena and has chosen to remain silent, it is conceivable that he may not wish to assert his privacy interest in those records.

Courts have traditionally held that a privilege must be asserted by the owner when the subject matter of the privilege is first presented in the proceedings or risk a finding of waiver. *See, e.g.*, *City of West Haven v. Liberty Mut. Ins. Co.*, No. N–87–68 (PCD), 1989 WL 190242, at *4 (D.Conn. June 1, 1989) ("Having failed to raise a timely objection, and thus thwarted the orderly completion of the discovery process, defendant has effectively waived its right to object. "); *see also Large v. Our Lady of Mercy Medical Center*, No. 94 Civ. 5986(JGK)(THK), 1998 WL 65995, at *4 (S.D.N.Y. Feb. 17, 1998) ("It is clear that there was never a proper assertion of privilege, . . . thus resulting in a waiver of the privilege."); *Litton Sys., Inc. v. American Tel. & Tel. Co.*, 90 F.R.D. 410, 417 (S.D.N.Y.1981) ("Failure to record a claim of privilege in accordance with [established] procedure effectively waives any privilege or immunity which might otherwise be asserted."); *Batson v. Neal Spelce Associates, Inc.*, 112 F.R.D. 632, 639 (W.D.Tex.), *aff'd*, 805 F.2d 546 (5th Cir.1986) ( "Plaintiff's privilege, if any, had long since been waived as it was never asserted in response to the initial subpoena."); *W.R. Grace & Co. v. Pullman, Inc.*, 446 F.Supp. 771, 775 (W.D.Okl.1976) (failure to assert objection based on privilege constitutes waiver of the objection); 81 Am. Jur. 2d Witnesses § 282 (Westlaw

---

[21] Plaintiff's Complaint contains no allegations regarding marital difficulties of the Tavares couple. Rather, plaintiff solely seeks recovery for her own distress, depression, and anxiety.

update May 2012) ("Because the privilege [of preventing disclosure of confidential communications] is not effective without claim or assertion, it must be presented and claimed by the owner when the subject matter of it is first presented or it will be regarded as waived."). As of this date, neither Mr. nor Mrs. Tavares has filed any statement of opposition to the subpoena at issue.[22]

However, because the Court has found that plaintiff waived her privilege with respect to the marital therapy records, it need not address whether Mr. Tavares, who is a neither a party nor yet a witness to this action, has waived his privilege by silence. If the marital therapy records are relevant and thus discoverable as to Mrs. Tavares, their production will unavoidably result in disclosure of communications regarding Mr. Tavares as well.[23] The Court will thus turn to the question of relevance of the records before contemplating proper measures to protect Mr. Tavares's privacy interest in them.

## C.  Relevance of the Marital Therapy Records Sought

With respect to the relevance of the marital therapy records sought by subpoena, courts have found that, even when a claim is brought for wrongful termination, making no specific allegations as to marital difficulties, plaintiff's marital therapy records are relevant as to resulting emotional

---

[22] Plaintiff had previously objected to a subpoena duces tecum served on Dr. David London for records of psychiatric treatment of Joseph Tavares from January 2009 to the present. Doc. #30-1. Prior to the defendant's voluntary withdrawal of that subpoena (Doc. #37), plaintiff filed opposition papers which stated that "the [p]atient, Joe Tavares, has objected to his medical information being release[d] and does not consent to such records being disclosed." Doc. #28, p. 3. Even were the Court to credit such hearsay, that statement referenced medical records held by Dr. London and thus has no direct application to the currently pending motion regarding marital therapy records to be produced by Dr. Rossomando.

[23] Therapy of a couple necessarily addresses both husband and wife, thereby impacting the privacy of both individuals. Thus, Dr. Rossomando's marital therapy records will inevitably reveal communications with respect to Mr. Tavares as well as the plaintiff.

distress.  For example, in *Alden v. Time Warner, Inc*., No. 94 Civ. 6109 (JFK),  1995 WL 679238

(S.D.N.Y. Nov. 14, 1995), involving an action for wrongful termination of employment on the basis

of age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621,  *et seq*., and

under state law, Magistrate Judge Francis allowed discovery of plaintiff's marriage counseling

records as "relevant," explaining as follows:

> By seeking $2 million in damages for emotional distress allegedly caused by the
> defendant, [plaintiff] has clearly placed his emotional health at issue in this case. *See
> Lowe v. Philadelphia Newspapers, Inc*., 101 F.R.D. 296, 298 (E.D. Pa. 1983). The
> more difficult question is whether the specific records sought would provide any
> information relevant to that issue.
>
> . . .
>
> Marital difficulties significant enough to prompt counseling are likely to have been
> an independent cause of emotional distress. Moreover, if any counseling sessions
> postdated [plaintiff's] termination from his job, it is probable that he discussed this
> source of stress with the counselor. I am mindful that [his wife's] privacy interests
> are also implicated, but these can be protected with a proper confidentiality order.

1995 WL 679238, at *2.

     In the case at bar, to the extent that plaintiff's marital counseling sessions post-date her

termination by L&M and involve therapy for her resulting emotional distress, those records are

relevant.  On the other hand, if such records reflect emotional distress immediately preceding and/or

contributing to her alleged emotional distress in this action, defendant may properly explore whether

plaintiff's alleged distress was in truth related to her termination.   *See, e.g., Lowe v. Philadelphia*

*Newspapers, Inc*., 101 F.R.D. 296, 298 (D.Pa. 1983) ("Defense counsel. . . has a clear right to make

a searching inquiry into plaintiff's past for the purpose, among others, of showing that her emotional

. . . distress was caused, at least in part, if not in whole, by events and circumstances that were in no

way 'job related.' ").  In other words, "if [plaintiff] contends that she has suffered emotional distress,

clearly defendant is entitled to present evidence that other stressful situations in her past personal history have contributed to her emotional distress." *Id.*

Having found the marital therapy records relevant in topic and discoverable as to plaintiff, the Court examines the time frame in the subpoena duces tecum.  Given the broad time frame of records requested – records of "treatment of Lori Tavares and Joseph Tavares *since January 2005*" – the requested records predate plaintiff's termination on April 27, 2010,  by over five years. However, as described above, "courts have recognized that when a party puts his or her mental state at issue, his or her opponent has a right to conduct an inquiry into present *and* past communications between psychotherapist and patient." *Green v. St. Vincent's Medical Center*, 252 F.R.D. 125, 128 (D.Conn. 2008)(citing *Sidor v. Reno*, No. 95 Civ. 9588 (KMW), 1998 WL 164823, at *2 (S.D.N.Y. April 7, 1998)) (emphasis in original).  "Such inquiry enables defense counsel to attempt to show that a plaintiff's emotional distress was caused at least in part by events and circumstances other than those at issue in the immediate case." *Green*, 252 F.R.D. at 128.

The expanse of time in the subpoena at issue, "January 2005 to the present," is also appropriate because Dr. Rossomando's May 11, 2010 letter (Doc. #34-3, p. 9), disclosed by plaintiff in discovery, stated that plaintiff sought therapy "to assist her in dealing with the chronic stress and anxiety related to her husband's severe accident related disability (*May 2004*)."  Doc. #34-3 (emphasis added).  If indeed Mr. Tavares's original disability dates back to May of 2004 and was a factor in  plaintiff seeking therapy from Dr. Rossomando, records from 2005 may be relevant as to the stressful events and circumstances which preceded plaintiff's husband's surgery in February 2010 and the termination of her employment in April 2010.  Accordingly, discovery regarding plaintiff's psychological therapy occurring approximately eight months after her husband's original

disability in May 2004 may be relevant as to plaintiff's past personal history of emotional distress. In light of the broad scope of discovery contemplated by Federal Rule of Civil Procedure 26(b), the Court shall allow the time frame referenced in the subpoena to remain as written.

**D.      Protection of Joseph Tavares's Privacy Interests in Joint Marital Therapy Records**

Finally, the Court will not ignore the intrusion into the privacy of the marital therapy records of non-party Joseph Tavares. To minimize said intrusion, the Court shall adopt and enter the proposed protective order of defendant (Doc. #34-1), as modified by the Court, ordering both parties to limit the use of said marital therapy records solely to the preparation and conduct of the litigation at hand and mandating either destruction or return of the records to Dr. Rossomando upon conclusion of the case.[24] This Order governs the use and disclosure of any protected health information disclosed in response to the subpoena on Dr. Rossomando. In particular, by entering

---

[24] The Court notes with approval that the proffered protective order aligns with principles set forth in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104–191, 110 Stat.1936, 45 C.F.R. § 164.512, *et seq.* Under HIPAA, the "Privacy Rule," codified at 45 C.F.R. §§ 160 and 164, provides national standards to protect the confidentiality of an individual's medical records and personal health information. HIPAA thus "restricts and defines the ability of health plans, health care clearinghouses, and most health care providers to divulge patient medical records." 194 A.L.R. Fed. 133.

Pertinent to the case at bar, HIPAA permits disclosure of protected health records in a judicial proceeding if the Court enters the parties' qualified protective order which:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity [*i.e.,* physician or therapist] or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(1)(v)(A).

the Order, the Court makes no finding as to the propriety of the contents of *any other subpoena* defendant may serve in the future on other medical professionals regarding the records of plaintiff and/or her husband.[25]

The parties are reminded that, pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104–191, 110 Stat.1936, 45 C.F.R. § 164.512, *et seq.*, information exchanged between them during discovery is not subject to a First Amendment or common-law public right of access. Thus, discovery involving the Tavares's marital therapy records should in no way disclose these records to the public. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("pretrial depositions and interrogatories are not public components of a civil trial"). Moreover, should the parties move to admit the marital therapy records into evidence at trial, the Court may, if appropriate, entertain motions to seal (*i.e.*, redact) if such sealing is supported by "clear and compelling reasons" and "narrowly tailored to serve those reasons." D. Conn. L. Civ. R. 5(e)(3). *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir.2006)); *In re New York Times Co.*, 828 F.2d 110, 114-16 (2d Cir.1987), *cert. denied*, 485 U.S. 977 (1988).

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court DENIES the Motion to Quash of non-party Nina

---

[25] The Court has modified defendant's proposed protective order (Doc. #34-1) to pertain solely to the production of protected medical information and records by Dr. Rossomando. The Court shall rule separately on defendant's motion for entry of a general qualified protective order (Doc. #35) with respect to other medical records of plaintiff and her husband, Joseph Tavares. In that motion, L&M has expressed its desire to subpoena, for example, Mr. Tavares's medical records held by Alan Waitze, M.D. in order "to inquire into the issues of treatment, injury and damage raised by plaintiff's allegations and L&M's answer, and to probe certain evidence relied on by plaintiff in support of her claims." Doc. #35, p. 1.

Rossomando (Doc. #26).  The subpoena duces tecum at issue does not seek disclosure of privileged material *without* an exception or *waiver*,   Fed. R. Civ. P. 45 (c)(3)(A) (iii).   Although there is a recognized privilege at federal common law for confidential communications between a licensed psychotherapist and her patients, *Jaffee v. Redmond*, 518 U.S. at 15, and that privilege arguably extends to marriage counseling records, plaintiff has both expressly and impliedly waived that privilege.[26]  Not only did she sign an authorization, explicitly releasing her "mental health" records to defendant's counsel, thereby waiving the privilege, but she also placed her mental state directly in issue when she filed her claim for negligent infliction of emotional distress.   *Jacobs v. Conn. Cmty. Technical Colls.*, 258 F.R.D. at 195-96.  Plaintiff's related testimony in prior proceedings and discovery responses in suit, including submission of a letter regarding her treatment by Dr. Rossomando, have confirmed both her waiver of the privilege and the relevancy of her mental state in determining the issues in this litigation.

Perhaps due to his non-party status, plaintiff's husband, Joseph Tavares, has remained silent – made no objection to the subpoena at issue and asserted no privilege as to the marital therapy records held by Dr. Rossamondo.  Yet, Mr. Tavares, in contrast to his wife, has made no known express waiver of his privacy interest in the records sought; nor has he impliedly waived such an interest by placing his mental state in issue.  Nonetheless, due to plaintiff's waiver with respect to those records and their relevance in these proceedings, it is not feasible to shield their contents from discovery.  In the interest of preserving the confidentiality of the marital therapy records, the Court hereby enters the defendant's proposed "HIPAA Qualified Protective Order" (Doc. #34-1), as

---

[26]  Dr. Rossomando's reliance on Conn. Gen. Stat. § 52-146p(b) is inapposite in that this Court has "federal question" subject matter jurisdiction and the records at issue are relevant as to plaintiff's state and federal claims so that federal common law applies to the relevant privilege.

modified.  Under that Order, the parties shall use said records only for purposes of preparation and

proceedings in the pending litigation and shall promptly destroy or return the records to the

safekeeping of Dr. Rossamondo upon the conclusion of all proceedings in the case.   Upon entry of

this Ruling and the "HIPAA Qualified Protective Order," defendant may re-serve its subpoena, and

thereby reschedule the deposition of and production of documents by Dr. Nina Rossamondo.

It is So Ordered.

Dated:  New Haven, Connecticut
        September 20, 2012

/s/Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge